**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

```
FREDERICK GIPSON,              *
                              *
     Plaintiff,               *     CIVIL ACTION NO. 14-00536-B
                              *
vs.                           *
                              *
CAROLYN W. COLVIN,            *
Commissioner of Social        *
Security,                     *
                              *
     Defendant.               *
```

**ORDER**

Plaintiff Frederick Gipson (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq*. On October 9, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 14). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.   **Procedural History**

Plaintiff filed his applications for benefits on April 28, 2011. (Tr. 172, 174). Plaintiff alleged that he has been disabled since November 19, 2010, due to "mental problems, back and wrist pain, learning disability, slow learner, mental depression, confuse (sic), back problem, lack of knowledge and understanding, mood change each and every month, understanding what is right and what is wrong." (Id. at 220, 224).

Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Mary E. Helmer (hereinafter "ALJ") on January 16, 2013. (Id. at 45). Plaintiff attended the hearing with his counsel and provided testimony related to his impairments. (Id. at 48). A medical expert ("ME") and a vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 67, 75). On April 2, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 39). The Appeals Council denied Plaintiff's request for review on September 23, 2014. (Id. at 1-2). Therefore, the ALJ's decision dated April 2, 2013, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties

waived oral argument on October 9, 2015 (Doc. 13), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

1. **Whether the ALJ erred in finding that Plaintiff does not meet the criteria for Listing 12.05B, and in rejecting the opinion of consulting psychologist, Dr. Nina Tocci, Ph.D.?**

2. **Whether the hearing transcript is adequate for the Court to review the case?**

## III. Factual Background

Plaintiff was born on May 1, 1974, and was thirty-eight years of age at the time of his administrative hearing on January 16, 2013. (Tr. 45, 220). Plaintiff testified that he was enrolled in special education classes in school and completed the eleventh grade, but was unable to pass the high school graduation exam. (Id. at 49, 216). Plaintiff's school records reflect poor academic performance throughout his school career. (Id. at 216-18).

According to Plaintiff's testimony and his Work History Report, he last worked as a machine operator and laborer for a lumber company for approximately two and a half years, from February 2007 to July 2009. (Id. at 53, 230). Prior to that, Plaintiff worked as a machine operator and laborer at a catfish

plant and at several warehouses.  (Id. at 51-53, 240-47).  He also worked as a fork lift driver.  (Id. at 244).  Plaintiff was fired from each of these jobs.[1]  (Id. at 51-53).

Plaintiff testified that he has problems getting along with people, that people make him nervous, and that he prefers to be alone.  (Id. at 54-58).  He also testified that he has been taking medication for nervousness, and it helps him stay calm. (Id. at 57-58).

Plaintiff testified that he lives with his mother and generally spends his time watching television or sitting on the porch.  He also socializes with his cousins, an old classmate, and a girlfriend, and he goes to church.  (Id. at 54-56, 256). Plaintiff had a driver's license, but it was suspended because of a DUI.[2]  (Id. at 61-62).

In his Function Report, Plaintiff reported that his mother prepares his breakfast and that he can prepare sandwiches and frozen meals.  (Id. at 251, 254).  He also reported that he has "no problem" with personal care and is able to take care of all of his own personal care needs; however, his mother tells him

---

[1] Plaintiff testified that he could not remember why he was fired from each of these jobs, except with respect to his job at Foster Farms.  Referencing that job, Plaintiff stated, "I think I got into it with a supervisor, I think."  (Tr. 53).

[2] Plaintiff was assessed at the Cahaba Center for Mental Health with alcohol dependency.  (Tr. 374-75).

how to dress and reminds him to take his medication.  (Id. at 253-254).  Plaintiff further reported that he can operate a riding lawn mower, shop with his mother, and count change; however, he does not pay his own bills and has never had a checking account.  (Id. at 50, 255).  Plaintiff reported problems understanding, concentrating, and remembering, and also indicated that he gets along "ok" with authority figures, but he has been fired from jobs for mood changes.  (Id. at 257-258).  According to Plaintiff, his mind comes and goes and will not allow him keep a job.  (Id. at 251-53).

## IV.  **Analysis**

### A.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v.

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

   B.   **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for

determining if a claimant has proven his disability.[4]  20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 19, 2010, the alleged onset date, and that he has the severe impairments of drug and alcohol abuse, borderline intellectual functioning, mild depression, and antisocial personality disorder. (Tr. 30).  The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 31).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a full range of work at all exertional levels, except that Plaintiff is "limited to simple, routine, and repetitive tasks involving simple, work-related decisions, with few, if any, work place changes; he "is limited to work involving no direct contact with the public;" he "can perform work that involves being around co-workers throughout the day, but with only occasional interaction with co-workers." (Id. at 33). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms are not credible to the extent that they are inconsistent with the RFC assessment. (Id. at 35).

Utilizing the testimony of a VE, the ALJ found that considering Plaintiff's residual functional capacity for a range of work at all exertional levels, with the stated restrictions, as well as his age, education, and work experience, Plaintiff is capable of performing his past work as a lumberyard helper (heavy, unskilled) and as a fish machine feeder (medium, unskilled). (Id. at 38). Thus, the ALJ concluded that

Plaintiff is not disabled.  (Id. at 39).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

### 1.   Issues

**A. Whether the ALJ erred in finding that Plaintiff does not meet the criteria for Listing 12.05B and in rejecting the opinion of consulting psychologist, Dr. Nina Tocci, Ph.D.?**

In this case, Plaintiff argues that the ALJ erred in finding that he has the severe impairment of borderline intellectual functioning, that the ALJ erred in failing to find that he meets the criteria for Listing 12.05B (mental retardation), and that the ALJ erred in rejecting the opinion of consulting psychologist, Dr. Nina Tocci, Ph.D., and giving substantial weight to the opinions of non-examining reviewing psychologists, Dr. Ellen Eno, Ph.D., and Dr. Sydney Garner, Psy.D.[5]  (Doc. 8 at 1-3).  The Commissioner counters that the ALJ did not err in rejecting the opinion of Dr. Tocci because Dr. Tocci's opinion is inconsistent with the substantial evidence in the case, that the ALJ did not err in finding that Plaintiff does not satisfy the criteria for Listing 12.05B because Plaintiff's Full Scale IQ score of 48 is not valid and is not an accurate reflection of his capabilities, and that the

---

[5] Because these three issues are inextricably interwoven, the Court discusses them together.

substantial evidence (such as Plaintiff's medical records showing alcohol abuse and exaggeration of symptoms, Plaintiff's work history, Plaintiff's activities of daily living, and the opinions of the medical expert, Dr. Garner, and reviewing psychologist Dr. Eno) reflect functioning more consistent with a finding of borderline intellectual functioning than mental retardation. (Doc. 11 at 10-13). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

In order for a claimant to meet Listing 12.05B (mental retardation), he must present evidence of "[a] valid verbal, performance, or full scale IQ of 59 or less." Jackson v. Astrue, 2011 U.S. Dist. LEXIS 95629, *12, 2011 WL 3757894, *4 (S.D. Ala. Aug. 25, 2011)(quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05B (2010)). In addition, he must satisfy the "diagnostic description" of mental retardation in Listing 12.05 (the listing category for mental retardation/intellectual disability),[6] which provides that mental

---

[6] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)). "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people. Id. (citations and internal quotation marks omitted). "The Social Security Administration stated that the change does not affect the actual medical

retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05.

In this Circuit, it is presumed that a person's IQ remains fairly constant throughout his or her life, and a valid IQ test score meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two. Dragg v. Astrue, 2012 U.S. Dist. LEXIS 71717, *6, 2012 WL 1885126, *3 (N.D. Ala. May 23, 2012) (citing Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001)); Jackson, 2011 U.S. Dist. LEXIS 95629 at *12-13, 2011 WL 3757894 at *4. However, the Commissioner may present evidence of the claimant's daily life to rebut the presumption of disability. Whetstone v. Barnhart, 263 F. Supp. 2d 1318, 1325 (M.D. Ala. 2003) (citing Hodges, 276 F.3d at 1269).

Indeed, the Eleventh Circuit has made clear that "a valid I.Q. score is not conclusive of mental retardation if the score is 'inconsistent with other evidence in the record on the claimant's daily activities and behavior.'" Id. (citing Lowery

definition of the disorder or available programs or services." Id. (citations and internal quotation marks omitted). As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)). Accordingly, the ALJ is tasked with determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the Hodges presumption. See Grant v. Astrue, 255 Fed. Appx. 374, 375 (11th Cir. 2007); Hartman v. Colvin, 2014 U.S. Dist. LEXIS 91467, *7, 2014 WL 3058550, *3 (S.D. Ala. July 7, 2014).

In addition, as part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist," on the other

hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler,

764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In this case, the ALJ found that Plaintiff did not meet Listing 12.05B on two grounds: (1) the IQ test score was invalid and (2) the evidence of Plaintiff's school history, work history, medical records, and daily life are inconsistent with an IQ score of 48 and are more consistent with a finding of borderline intellectual functioning than mental retardation. (Tr. 33-38). In doing so, the ALJ rejected the opinions and IQ test results of consultative psychologist, Dr. Tocci, as being inconsistent with the substantial evidence in the case. (Id. at 36).

The record shows that Dr. Tocci examined Plaintiff on July 13, 2011, and conducted IQ testing, which resulted in a Full Scale IQ score of 48. Dr. Tocci opined that Plaintiff's Full Scale IQ score was valid. (Id. at 349-51). Dr. Tocci also diagnosed Plaintiff with Mental Retardation and noted that Plaintiff's IQ testing, poor academic record, and history of being fired from jobs supported the diagnosis.[7] (Id. at 349-50).

---

[7] Dr. Tocci noted that, during testing, Plaintiff evinced difficulty understanding and performing simple tasks and that he was unable to hold directions in his memory long enough to complete a task. (Tr. 351).

The ALJ rejected the IQ test results and gave Dr. Tocci's opinions "little weight" based on the fact that they were inconsistent with the substantial evidence in the record, including Dr. Tocci's own findings that Plaintiff's affect was appropriate, normal, and stable; his mood was "good;" he was oriented to person; his thought content was appropriate to mood and circumstances, and he had a logical thought organization. (Id. at 36, 350). In addition, Dr. Tocci's notes reflect that she relied on Plaintiff's report that he requires assistance with his activities of daily living and does not have friends; however, those statements are inconsistent with his testimony at the hearing and his statements to the Agency that he has no problem with his personal care needs, that he prepares simple meals, that he uses a riding lawnmower to take care of his lawn, and that he socializes on the weekends with a classmate, his girlfriend, and his cousin. (Id. at 54-56, 253-56).

In addition, Plaintiff's IQ test score and Dr. Tocci's diagnosis of mental retardation are inconsistent with the remaining substantial evidence in this case, including the following: On August 2, 2011, two weeks after Dr. Tocci's evaluation, Plaintiff was diagnosed with ongoing alcohol dependency at the Cahaba Center for Mental Health, where he was treated for substance abuse by psychiatrist, Dr. Timothy Baltz, M.D., and his staff. (Id. at 374-75, 383-84, 387). This is

significant because Dr. Tocci's opinions were based, in part, on Plaintiff's false report that he only drank alcohol "sometimes." (Id. at 349).

In addition, medical expert, Dr. Sydney Garner, Psy.D., testified at the hearing that Plaintiff was not functioning in the range of a person with an IQ score of 48, that Plaintiff's past work history and previous functioning (such as driving) did not support a finding of mental retardation, and that alcohol use "could have definitely lowered his [IQ] score" and interfered with his socialization. (Id. at 65, 69). Dr. Garner further noted that Plaintiff's medical records reflect a history of exaggeration of symptomology, which is a feature of personality disorder.[8] (Id.).

Consistent with Dr. Garner's opinion is the opinion of Plaintiff's treating psychiatrist, Dr. Baltz, who noted on more than one occasion that Plaintiff "appears to be exaggerating symptomology." (Id. at 371, 388). Dr. Baltz treated Plaintiff

---

[8] Dr. Garner opined that Plaintiff suffers from alcohol dependence, mild depression, and antisocial personality disorder and stated that Plaintiff has no impairments in maintaining activities of daily living, has only mild to moderate impairments in maintaining concentration, persistence, and pace, only moderate impairments in maintaining social functioning, and no episodes of decompensation. (Tr. 65-66). Dr. Garner also opined that Plaintiff would need limited contact with customers, co-workers, and with the general public, unskilled work activities, simple, routine, repetitive tasks, simple work-related decisions, and few workplace changes. (Id.).

for almost two years; yet, at no time did he ever indicate that Plaintiff was mentally retarded.   To the contrary, Dr. Baltz estimated Plaintiff's IQ to be in the "low-average range."[9]   (Id. at 371).

Likewise, the opinions of State Agency reviewer, Dr. Ellen Eno, Ph.D., are inconsistent with the opinions of Dr. Tocci. Dr. Eno opined that the "claimant's grades in school and OLSAT scores suggest a Borderline IQ.   His work history and functional behaviors support this.   The scores reported by Dr. Tocci are not supported by the data in the file."   (Id. at 365).   Dr. Eno found only mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation.   (Id. at 363).

Also, as previously discussed, the evidence of Plaintiff's previous work history and activities of daily living are inconsistent with Dr. Tocci's opinions and Plaintiff's IQ score. The evidence reflects that Plaintiff worked from 2005 to 2009 in approximately eight jobs in various industries as a laborer and as a machine operator.   (Id. at 51-53, 230, 240-47).   While Plaintiff reported that he was fired from each of these jobs, he

---

[9] Dr. Baltz diagnosed Plaintiff with Mood Disorder, NOS (somewhat improved), Anxiety Disorder, NOS, and Selective Mutism features. (Tr. 371, 385, 388).

did not contend that he was not capable of performing the
assigned job tasks.   Instead, Plaintiff asserts that he was
fired from one job after he "got into it with a supervisor," and
he that cannot remember why he was fired from the other jobs.
(Id. at 51-53).   Moreover, Plaintiff's activities of daily
living include socializing with friends, a girlfriend, and
family, going to church, driving (until his license was
suspended because of a DUI), taking care of his own personal
needs, fixing simple meals, operating a riding lawn mower, and
counting change.   (Id. at 50, 54-56, 61-62, 251-56).   All of
this evidence is inconsistent with Dr. Tocci's opinions and
Plaintiff's Full Scale IQ score of 48.

Finally, the Court finds it instructive that on June 30,
2011, Dr. Stephen Robidoux, M.D., attempted to conduct a
consultative physical examination to evaluate Plaintiff's claims
of back problems.   However, Dr. Robidoux reported that Plaintiff
became belligerent and would not allow the examination to
proceed except on Plaintiff's terms.   (Id. at 344-47).   Dr.
Robidoux's notes reveal that Plaintiff was fully in control of
his examination; he had no difficultly articulating his demands;
and he was functioning well above the expectations of an
individual with a Full Scale IQ score of 48.[10]   Dr. Robidoux

---

[10] Dr. Robidoux documented the following statement by Plaintiff:
"In 2006 or 2007 or 2008, I was working in a warehouse lifting

diagnosed Plaintiff with "sociopathic personality disorder." (Id. at 346). This evidence supports the ALJ's finding that Plaintiff is functioning above the range of an individual with a Full Scale IQ score of 48 and that his IQ is more consistent with borderline intellectual functioning than mental retardation.[11]

The Court is aware, as was the ALJ, of Plaintiff's poor academic performance in school, his special education classes, and the letter from Plaintiff's former teacher, Callie Sanders, stating that Plaintiff struggled in school and that it was her

---

50 to 100 pound boxes and my back WENT OUT[.] That's it[.] MY BACK WENT OUT[.] [W]hat else do you need to know??" (Tr. 344). Dr. Robidoux documented that Plaintiff became very belligerent when asked the meaning of "his back went out," and refused to answer. Dr. Robidoux called Plaintiff's disability specialist on the telephone and had her speak to Plaintiff. Thereafter, Plaintiff resumed his tirade, stating: "Then I fell down, doesn't everybody whose back goes out? I don't know how you got your license. I went by car the next day to a doctor in Birmingham. I don't know his name. He x-rayed me and ran tests. Then he gave me medicine. I haven't been to a doctor for my back since then. I haven't been to anyone else. No chiropractor, no physical therapy, no back surgery, no epidural shots. I don't know what a CT or MRI scan is. I told you he did x-rays and tests." (Id.). When Dr. Robidoux then tried to conduct the physical examination, Plaintiff told him, "I will tell you what you can look at." (Id. at 345). Dr. Robidoux was required to ask permission, and have permission granted, to examine each body system. (Id.). Plaintiff refused many parts of the examination.

[11] Dr. Eno agreed with Dr. Robidoux that the evidence suggests "a Borderline IQ combined with a Personality Disorder." (Tr. 365). Dr. Eno concluded that, "[t]he personality problems displayed in Dr. Robidoux['s] evaluation make retesting for a more valid IQ unproductive." (Id.).

opinion that "mentally he is not cable (sic) of holding a job."[12]
(Id. at 219, 274, 287).    However, as the ALJ found, even
considering this evidence, the substantial evidence reflects a
level of functioning that is higher than Plaintiff's Full Scale
IQ score of 48 would indicate and that is more consistent with
borderline intellectual functioning than mental retardation.

    Based on the foregoing, the Court finds that the ALJ had
good cause to reject the opinions and IQ test results of
consultative psychologist, Dr. Tocci, as being inconsistent with
the substantial evidence in the case.   In addition, the Court
finds that substantial evidence in this case supports the ALJ's
finding that Plaintiff did not meet Listing 12.05B because (1)
the IQ test score was invalid, and (2) even assuming a valid
score, the evidence of Plaintiff's work history, medical
records, and activities of daily living rebuts the presumption
of mental retardation and supports the ALJ's finding that
Plaintiff can perform his past work as a lumberyard helper
(heavy, unskilled) and as a fish machine feeder (medium,
unskilled) and, thus, is not disabled. (Tr. 33-38).
Accordingly, Plaintiff's claim must fail.

---

[12] The ALJ properly considered Ms. Sanders' opinion in accordance
with SSR 06-03p but held that her opinion was not based on
objective facts or data and that her opinion, which was more
properly reserved for the Commissioner, was, in any event,
inaccurate given the evidence in the case.  (Tr. 34).

**B.    Whether   the   hearing   transcript   is
adequate   for   the   Court   to   review   the
case?**

Next,   Plaintiff   argues   that   the   transcript   of   his
administrative   hearing   shows   that   there   were   significant
problems   with   sound   quality   during   the   hearing,   resulting   in   an
incomplete   hearing   transcript   of   portions   of   the   Plaintiff's   and
the   experts'   testimony.   (Doc.   8   at   11).   The   Commissioner
counters   that,   while   some   portions   of   the   audio   recording   of   the
hearing   were   inaudible,   the   transcript   is   sufficient   to   allow
the   Court's   review.   (Doc.   11   at   14-17).   Having   carefully
reviewed   the   record   in   this   case,   the   Court   agrees   that
Plaintiff's   claim   is   without   merit.

The   Court   recognizes   that   the   ALJ   "has   a   duty   to   develop   a
full   and   fair   record."   George v. Astrue,   338   Fed.   Appx.   803,
805   (11th   Cir.   2009)   (quoting   Brown v. Shalala,   44   F.3d   931,   934
(11th   Cir.   1995)).   Nonetheless,   an   ALJ's   failure   to   fulfill   his
duty   to   fully   develop   the   record   "only   necessitates   a   remand   if
'the   record   reveals   evidentiary   gaps   which   result   in   unfairness
or   clear   prejudice.'"   Mosley v. Acting Commissioner of Soc.
Sec. Admin.,   2015   U.S.   App.   LEXIS   21193,   *7,   2015   WL   8105166,   *3
(11th   Cir.   Dec.   8,   2015)   (quoting   Brown,   44   F.3d   at   935).   "In
other   words,   'there   must   be   a   showing   of   prejudice   before   we
will   find   that   the   claimant's   right   to   due   process   has   been
violated   to   such   a   degree   that   the   case   must   be   remanded   to   the

[ALJ] for further development of the record.'" Id. (quoting Brown, 44 F.3d at 935). "Prejudice requires a showing that 'the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" Id. (quoting Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985)).

In this case, Plaintiff points to inaudible portions of the testimony of the medical expert, Dr. Garner, related to Plaintiff's IQ test scores and the question of whether Plaintiff met or equaled a listing. (Doc. 8 at 11). In the selected passage, Dr. Garner made it clear that Plaintiff did not meet or equal a listing, and, while it is unclear precisely to what he was referring when he said, "they're just not valid," it seems reasonable given his discussion of Plaintiff's IQ test results in the previous sentences that he was referring to the invalidity of Plaintiff's IQ test scores. (Id. at 65). Indeed, Dr. Garner specifically stated that Plaintiff had IQ scores in the 40's and 50's and that he did not believe that Plaintiff was functioning in that range. (Id. at 65).

Similarly, Plaintiff points to Dr. Garner's discussion of Plaintiff's school records and argues that inaudible portions of Dr. Garner's testimony make that passage incomprehensible. (Doc. 8 at 12). To the contrary, it is apparent to the Court

that Dr. Garner was testifying that Plaintiff's test score,
which he described as "a 78," was a reference to the 78 that
Plaintiff scored on the Otis Lennon School Ability Test (OLSAT),
a test score that Dr. Eno likewise found significant in her
Psychiatric Review Technique.[13]   (Id. at 288, 365).   Dr. Garner
testified that this test score was inconsistent with a diagnosis
of mental retardation, as was Plaintiff's level of functioning
and his work history.   (Id. at 66).

    Last, Plaintiff refers to inaudible gaps in the testimony
of the VE related to a hypothetical posed by the ALJ.   (Doc. 8
at 12).   While it is unclear precisely which restrictions the
ALJ posited in the second, partially inaudible hypothetical, the
ALJ's decision reveals that he relied on the VE's testimony
related to the first hypothetical, which was fully recorded.
(Id. at 38, 76-77).   Therefore, Plaintiff's argument related to
the second hypothetical, which was not relied upon by the ALJ,
is unavailing.

    Having reviewed the transcript at length, the Court finds
that, despite the court reporter's designations of some portions
of the transcript as "inaudible," the record as a whole is
neither incomplete nor inadequate.   To the contrary, the
passages referenced by Plaintiff contain some missing words but

---

[13] Dr. Eno opined that a 78 on the OLSAT suggested a borderline
IQ.   (Tr. 365).

are still capable of reasonable interpretation and do not demonstrate unfairness or prejudice to the Plaintiff. Accordingly, Plaintiff's claim is without merit.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **28th** day of **March, 2016.**

                          **/s/ SONJA F. BIVINS**
                     **UNITED STATES MAGISTRATE JUDGE**